IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOOTER'S PALS RESCUE,<br><br>          Plaintiff,<br><br>     v.<br><br>COUNTY OF PLACER; MARK STARR, DVM; ANTHONY LA BOUFF; DOES 1-20, INCLUSIVE,<br><br>          Defendants.<br>_____ | 2:12-cv-01736-GEB-KJN<br><br>ORDER DENYING IN PART AND GRANTING IN PART EACH DEFENDANT'S MOTION TO DISMISS |

Defendants Mark Starr DVM, Anthony La Bouff (the "individual Defendants"), and the County of Placer (collectively "Defendants") move for an order dismissing with prejudice Plaintiff Scooter's Pals Rescue's civil rights Complaint. The dismissal motion is sought under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). Each individual Defendant also seeks dismissal based on his qualified immunity defense.[1] Defendants attach three declarations and eight exhibits in support of their dismissal motion ("Mot."). Plaintiff Scooter's Pals Rescue ("Scooter's") opposes the motion and attaches five

---

[1] Further, Defendants move for dismissal of the portion of Plaintiff's prayer for relief in which Plaintiff seeks "a temporary restraining order and/or preliminary injunction and permanent injunction." (Compl. 8:20.) This portion of the motion is denied since Defendants have not shown that Rule 12(b)(6) is an appropriate Rule for challenging a prayer for injunctive relief.

1

declarations and twenty-one exhibits in support of its opposition ("Opp'n").

## I. FACTUAL BACKGROUND

This case concerns a dog named Charlie. Charlie was a Labrador Retriever mix whose elderly owners relinquished him to the Sacramento Society for the Prevention of Cruelty to Animals after they became unable to care for him. (Compl. ¶ 9.) Charlie was then fostered by Pam Fox for four months. (Id. at ¶ 10.) Fox found Charlie "to be a loving dog who needed some socialization given his size and because he had lived outside with minimal human interaction." (Id.) Charlie "did not engage in any physically threatening behavior" while with Fox, and Fox eventually requested to adopt Charlie. (Id.)

"For four months . . . Fox fostered Charlie through [a] rescue organization . . . " (Id. at ¶ 10.) "However, while being fostered another individual stepped forward, requested and adopted Charlie. When placing Charlie, the rescue imposed conditions on the adoption of Charlie including Charlie could not be placed in a home with children under ten years old given his size and lack of socialization. The adopter represented no children of that young age lived in the home." (Id. at ¶ 11.) However, she had a young daughter and other young children living in her home. (Id. at ¶ 12.) "Charlie was adopted on June 16, 2011." (Id. at ¶ 11.) "On June 27, 2011, Charlie bit the adopter's young daughter requiring medical treatment including numerous stitches." (Id. at 12.) Charlie was provoked by the adopter's children. (Id. at ¶ 13.) "On or about June 28, 2011, Charlie was impounded after the adopter was told she must turn over ownership of Charlie to the County" of Placer ("County"). (Id. at ¶ 12.)

1          When Scooter's learned of Charlie's impoundment, on July 6, 2011, Scooter's "contacted the Defendant Shelter Director Winters and employee T. Goffe with Placer County informing Defendant [that] Scooter's wanted to rescue Charlie under the conditions determined by any hearing officer if the dog were to be deemed vicious," and that Scooter's "agreed to a release of liability for the County." (Id. at ¶ 14.) Scooter's is a nonprofit 501(c)(3) corporation that provides foster homes and permanent homes for abandoned and abused dogs. (Id. at ¶ 4.) "On July 26, 2011[,] the previous adopter of Charlie notified Defendants she rescinded the contract to turn over ownership" of Charlie to the County, entered into on June 28, 2011, and "reconveyed ownership to Scooter's." (Id. at ¶ 16.) "As a result, [Scooter's] requested [Charlie's] immediate release or in the alternative" a due process hearing in accordance with Placer County Ordinance 6.08.040 so that it could be determined whether Charlie was vicious.(Id.) "In response to the notice of rescission, rather than returning Charlie to [Scooter's], or having a vicious animal hearing pursuant to state and county statutes, Defendants County and Starr [former Director of the County's Health and Human Services Department] ordered Charlie to be euthanized." (Id. at ¶ 17.) "On July 27, 2011, [Scooter's] filed a notice of appeal of said order with the Placer County Superior Court" under California "Food and Agriculture Code § 31621." (Id. at ¶ 18.) On July 29, 2011, "Starr and La Bouff [County Counsel] conveyed the order to the Shelter Director who euthanized Charlie." (Id. at ¶¶ 19, 34.) No hearing ever took place to determine whether Charlie was vicious. (Id. at ¶ 15.)

          Scooter's subsequently filed the instant federal lawsuit against Defendants in which it asserts federal claims under the Fourth and Fourteenth Amendments and 42 U.S.C. §§ 1983, 1985(c), and state

3

1 claims. (Id. at ¶¶ 2, 26, 28, 30.) Each Defendant challenges the sufficiency of Plaintiff's jurisdictional and substantive allegations.

## II. JUDICIAL NOTICE

Defendants' motion includes their request that the Court take judicial notice of the following matters: (1) on July 27, 2011, Scooter's filed a Notice of Appeal of County Counsel's letter scheduling Charlie's euthanasia with Placer County Superior Court and attached the Declaration of Rebecca Clark thereto; and (2) on January 10, 2012, a Placer County Superior Court Referee entered a two sentence judgment dismissing Plaintiff's Notice of Appeal as moot since "the subject dog (Charlie) has been euthanized." (ECF No. 9-5, 2:18-3:8.)

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation and internal quotation marks omitted). However, when considering a Rule 12(b)(6) dismissal motion, judicial notice of another court's opinion, may be taken "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." Lee, 250 F.3d at 690 (citation omitted). Therefore, judicial notice is taken of the following matter: Plaintiff's state court action was filed and subsequently dismissed as moot since "the subject dog (Charlie) has been euthanized." (Holt Decl., Ex. B.)

## III. DISCUSSION

### A. Rule 12(b)(1)

Rule 12(b)(1) challenges to a court's subject matter jurisdiction "can be either facial or factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Facial challenges attack the pleadings as

4

insufficient to invoke federal jurisdiction; factual challenges contest the truth of the jurisdictional pleadings. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack on jurisdiction, a court "may look beyond the complaint" to evaluate jurisdictional facts that are not intertwined with the merits of the action without converting the motion into a motion for summary judgment. <u>White</u>, 227 F.3d at 1242; <u>Trentacosta v. Frontier Pac. Aircraft Indus.</u>, 813 F.2d 1553, 1558 (9th Cir. 1987) (collecting cases). However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987) (citing <u>Augustine v. United States</u>, 704 F.2d 1074, 1077 (9th Cir. 1983)).

### 1. Standing

Defendants argue Scooter's lacks standing to assert its claims because Charlie's owner was Rebecca Clark, Charlie's previous adopter, not Scooter's. (Mot. 3:19-4:23.) Defendants rely on extrinsic evidence in support of this argument, including a First Amended Declaration from Rebecca Clark ("Am. Clark Decl."). Defendants rely on the Amended Clark Declaration as support for their contention that the original Rebecca Clark Declaration ("Clark Decl.") is not authentic. In the original Clark Declaration she "rescind[ed] [her] contract turning over ownership and requesting euthanasia of Charlie" and "conveyed [her] ownership of Charlie to Scooter's Pals, a 501(c)(3) rescue organization." (Clark Decl. ¶¶ 2-3.) Clark avers in the Amended Clark Declaration: she "ha[s] no recollection of signing [the original declaration], and [she] wouldn't have signed the document." (Am. Clark Decl. ¶ 12.) Scooter's submits extrinsic evidence supporting the authenticity of Clark's

original declaration, including Clark's e-mails in which Clark states she "do[es] not want Charlie to be put down" (ECF No. 10-2); declarations from Plaintiff's counsel and Plaintiff's legal secretary who took Clark's signature for the original Clark declaration (ECF No. 10-1); and Plaintiff's phone records indicating contact with Clark to arrange the signing of the original declaration. (ECF No. 10-2, Ex. 17.)

Defendants further assert that even if the original Clark declaration is valid, Scooter's did not own Charlie since the contract in which Clark surrendered Charlie to the County lacked consideration and an ascertainable object. Defendants also contend that even if the contract is valid, it cannot be rescinded since it was not based on mistake, duress, menace, fraud or undue influence in the inducement or execution. (Mot. 4:26-5:6 (citing Cal. Civ. Code §§ 1605, 1595, 1689(b)(1).) Scooter's counters that there was consideration for the contract and economic duress in its execution because the County "agreed to waive $485 in fees Clark owed [and could not pay relating to Charlie's dispatch, transport, and quarantine] *if* Clark agreed to relinquish Charlie to the County." (Opp'n 3:22-26.)[2]

To establish constitutional standing, Scooter's has the burden of demonstrating "three elements, which constitute the irreducible minimum of Article III standing: (1) *injury-in-fact*—plaintiff must allege concrete and particularized and actual or imminent harm to a

---

[2] Defendants also assert new challenges to Plaintiff's standing in their reply brief, including contentions that the County was not legally capable of contracting with Clark, that the contract Clark signed with the County did not represent a mutual agreement, and that the contract is void as contrary to public policy if it permitted rescission. (Mot. 4:7-5:23.) However, a "district court need not consider arguments raised for the first time in a reply brief," and therefore Defendants' new arguments in their reply brief are disregarded. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

1  legally protected interest; (2) *causal connection*—the injury must be
2  fairly traceable to the conduct complained of; and (3) *redressability*—a
3  favorable decision must be likely to redress the injury-in-fact." Barnum
4  Timber Co. v. U.S. EPA, 633 F.3d 894, 897 (9th Cir. 2011) (internal
5  quotation marks and citations omitted). At issue here is the component
6  of the injury-in-fact element concerning whether Scooter's has
7  sufficiently alleged "an invasion of a legally protected interest."
8  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).
9        The question is whether Scooter's has sufficiently alleged
10 that it had a legally protected ownership interest in Charlie. The
11 resolution of this disputed factual matter concerns jurisdictional and
12 substantive issues "so intertwined that the question of jurisdiction is
13 dependent on the resolution of factual issues going to the merits of
14 [each substantive federal claim,]" since Scooter's can only have
15 standing to assert these claims if it owned Charlie. Sun Valley
16 Gasoline, Inc. v. Ernst Enters., Inc., 711 F.2d 138, 139 (9th Cir.
17 1983). Defendants argue that Plaintiff's lack of ownership provides a
18 basis for dismissal of all of Plaintiff's claims on the merits. (Reply
19 3:1-2; Mot. 13:25-14:10, 14:11-15:2, 19:10, 19:22-23, 20:22-23.) Here
20 Charlie's ownership is not only a standing jurisdictional requisite, it
21 is also an essential element of each federal claim since each claim is
22 premised on Plaintiff's ownership of Charlie. However, a district court
23 is not "permitted to resolve disputed factual issues bearing upon
24 subject matter jurisdiction in the context of a Rule 12(b)(1) motion"
25 when "'the jurisdictional issue and the substantive issues are so
26 intermeshed that the question of jurisdiction is dependent on decision
27 of the merits.'" Kingman Reef Atoll Invs., L.L.C. v. United States, 541
28 F.3d 1189, 1197 (9th Cir. 2008) (citation omitted). Further, when

7

1  deciding each Defendant's 12(b)(6) motion the court "accept[s] as true
2  all well-pleaded allegations of material fact [in the Complaint], and
3  construe[s] them in the light most favorable to the non-moving party."
4  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010)
5  (citation omitted).
6  　　　Since the Charlie ownership issue is inextricably intertwined
7  with the ultimate merits of Plaintiff's federal claims, the "standards
8  of a 12(b)(1) motion are not appropriate for . . . resolution of [the
9  merits of this disputed] factual issue[] . . . ." Roberts, 812 F.2d at
10 1177. Accordingly, this portion of each Defendant's dismissal motion is
11 denied.

## 2. **Rooker-Feldman**

13 　　　Each Defendant also argues the Complaint should be dismissed
14 under Rule 12(b)(1) since it is barred by the Rooker-Feldman doctrine
15 because the Complaint is "inextricably intertwined" with the state court
16 judgment dismissing Plaintiff's appeal of the County's decision to
17 euthanize Charlie. (Mot. 8:6-22.) Scooter's counters that Rooker-Feldman
18 is inapplicable since Scooter's lacked a reasonable opportunity to
19 litigate its claims in state court, as the County never administered a
20 vicious dog hearing and Plaintiff's state court appeal was dismissed as
21 moot after Charlie was killed. (Opp'n 10:20-11:8.)
22 　　　"The Rooker-Feldman doctrine," which "evolved from the two
23 Supreme Court cases from which it takes its name[,] . . . . bars federal
24 district courts from exercising subject matter jurisdiction over a suit
25 that is a de facto appeal from a state court judgment." Wolfe v.
26 Strankman,392 F.3d 358, 362-63 (9th Cir. 2004)(citations and internal
27 quotation marks omitted). However the "doctrine has no application to
28 judicial review of executive action, including determinations made by a

state administrative agency." Verizon Md. Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 644 n.3 (2002). Further, the Rooker-Feldman doctrine does not apply "where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party." Noel v. Hall, 341 F.3d 1148, 1163 (9th Cir. 2003). Scooter's "asserts as . . . legal wrong[s] . . . allegedly illegal act[s] or omission[s] by [Defendants], [therefore] Rooker–Feldman does not bar jurisdiction." Id. at 1164.

Therefore, this portion of each Defendant's Rule 12(b)(1) dismissal motion is denied.

**B. Rule 12(b)(6)**

Decision on each Defendant's Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007)).

In evaluating a Rule 12(b)(6) motion, the court "accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Serv., 671 F.3d 1138, 1142-43 (9th Cir. 2012) (citing Twombly, 544 U.S. at 555-56)). Review of a Rule 12(b)(6) motion is limited to the complaint, judicially noticed matters, and documents that are necessary to the complaint and whose authenticity is not

9

contested. Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993); Lee, 250 F.3d at 689-90.

Here, each Defendant's Rule 12(b)(6) dismissal motion includes arguments supported by declarations and exhibits most of which are outside of Plaintiff's Complaint, and are not factual matters that can be considered when deciding the motion. It should be evident that "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." Lee, 250 F.3d at 688. Therefore, the referenced factual matters are disregarded.

### 1. Fourth and Fourteenth Amendment

Each Defendant seeks dismissal of Plaintiff's Fourth and Fourteenth Amendment claims alleged under 42 U.S.C. § 1983, arguing, among other things, that Plaintiff "fails to allege a violation of a fundamental right" and to "identify any [unconstitutional] custom or policy of the County," since "plaintiff's complaint is about the treatment of one dog." (Mot. 15:27, 21:15, 22:3-4.) Scooter's counters that killing Charlie constituted "an egregious [governmental] taking of a fundamental right, the right to own property," and that this deprivation was caused by Defendants Starr and La Bouff who "were the policy makers for the County and [] the direct actors in the constitutional violations against Plaintiff." (Opp'n 12:12, 15:2-3.)

### I. § 1983 Claim Against the County

Section 1983 authorizes individual suits to enforce existing federal and constitutional rights. However, under the U.S. Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658, 690-92 (1978), a municipality is only exposed to § 1983 liability for deprivations of a constitutional right resulting from its policy or custom. Therefore, to plead a § 1983 claim against the County, Scooter's

10

must allege that the County's allegedly unconstitutional action was caused by its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001) (citing Monell, 436 U.S. at 694).

Plaintiff's allegations germane to its Monell liability claim against the County are the following: "Defendant County has a policy and practice of confiscating and destroying personal property of rescue's organization [sic] such as Plaintiff"; Defendants "intend to continue this unlawful conduct as an going [sic] practice an [sic] policy of the County"; "Winters [a County employee] informed Plaintiff [that] Defendant County and Defendant Starr w[ere] denying [Charlie's] release"; "Defendants County and Starr ordered Charlie to be euthanized"; and "Starr and La Bouff conveyed the order to the Shelter Director who euthanized Charlie." (Compl. ¶¶ 20, 22, 15, 17, 34.) These allegations fail to identify (or assert the existence of) any "expressly adopted official policy" or "permanent, widespread, well-settled practice or custom" of taking and killing dogs of rescue organizations. Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011).

However, Scooter's makes the conclusory argument in its opposition brief that the County is exposed § 1983 liability because Defendants Starr and La Bouff acted as final policymakers for the County. (Opp'n 15:2-3.) A municipality is liable under section 1983 for the actions of final policymakers "'whose acts or edicts may be fairly said to represent official policy.'" Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (citing Monell, 436 U.S. at 694). A public official is a final policymaker if he "possesses 'final authority' to establish

municipal policy with respect to the action ordered." Collins v. City of San Diego, 841 F.2d 337, 341 (9th Cir. 1988) (citing Pembaur, 475 U.S. at 481). "When determining whether an individual has final policymaking authority, we ask whether he or she has authority '*in a particular area, or on a particular issue*.'" Lytle v. Carl, 382 F.3d 978, 983 (9th Cir. 2004) (citation omitted). This inquiry hinges on a "detailed analysis" of state law, though it may also be affected by "the way [the] local government entity operates in practice." Streit v. Cnty. of Los Angeles, 236 F.3d 552, 560 (9th Cir. 2001); Lytle, 382 F.3d at 983. Lower courts are instructed and admonished to "examine the particular function at issue in a given case" because "the nature of county government ha[s] varied historically from region to region, and from State to State." Streit, 236 F.3d at 560; McMillan v. Monroe Cnty., 520 U.S. 781, 795 (1997).

Plaintiff does not explicitly allege or otherwise plead that La Bouff and Starr are final policymakers in Placer County. Nor does the Placer County Code, Charter, or the California Constitution support a finding that either Starr or La Bouff is a final policymaker concerning the particular decision at issue. Under the Placer County Charter, County Counsel is an appointed officer who "serve[s] according to the terms of Government Code Section 27641 . . . . [and] ha[s] all the powers and duties of a County Counsel now or hereafter set forth in the general laws." Placer Cnty. Charter § 507. The California Government Code, in turn, confers on County Counsel the power to "discharge all duties vested by law in the district attorney other than those of a public prosecutor" and to maintain "exclusive charge and control of all civil actions and proceedings" in certain civil cases. Cal. Gov't Code §§ 27642, 27645. The California Constitution, meanwhile, is silent as

12

1  to the responsibilities and status of County Counsel. Nothing in these
2  provisions, however, supports a finding that County Counsel decides
3  which dogs are euthanized and which are not.
4  Under the Placer County Code, the Health and Human Services
5  Department, Animal Services Director appoints the hearing officer in a
6  viscous dog hearing; the hearing officer's order is then final if it is
7  not appealed; and the department may destroy the dog on the hearing
8  officer's recommendation if certain circumstances or conditions are met.
9  Placer Cnty. Code § 6.08.040. While such an official may be a final
10 policymaker with respect to the decision to euthanize Charlie, Plaintiff
11 does not allege that Starr was such an official. Rather, Plaintiff
12 alleges that Starr "was the former Director of Placer County's Health
13 and Human Services Department." (Compl. ¶ 6.) The Placer County Code is
14 silent as to the responsibilities of any Director of Health and Human
15 Services. Since Plaintiff has not alleged that Starr or La Bouff was a
16 final policy maker for the actions at issue, Plaintiff's § 1983 claim
17 against the County is dismissed.

### ii. § 1983 Claim Against the Individual Defendants

Defendants Starr and La Bouff seek dismissal of Plaintiff's § 1983 supervisory liability claim against them, arguing that Plaintiff "fails to set forth facts establishing [their] personal liability" since there was "nothing illegal" or unconstitutional about euthanizing Charlie "under the facts alleged." (Mot. 16:11-12, 16:14.) Plaintiff counters that these Defendants personally participated in the alleged constitutional violations because "the Defendants are the Directors of their respective Departments, each was appraised of the facts proving Scooter's Pals' ownership of Charlie and provided the law from

Plaintiff's counsel to support the requirement of a vicious dog hearing before euthanasia." (Opp'n 12:13-15, 13:1-3.)

"'A supervisor may be liable [under § 1983] if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Redman v. Cnty. of San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991) (citation omitted). "[A] supervisor, however, can[not] be held liable under § 1983 where no injury or constitutional violation has occurred." Jackson, 268 F.3d at 653.

Plaintiff alleges in its Complaint that County employee "Winters informed Plaintiff [that] Defendant County and Defendant Starr w[ere] denying [Charlie's] release"; "Defendants County and Starr ordered Charlie to be euthanized;" and "Starr and La Bouff conveyed the order to the Shelter Director who euthanized Charlie." " (Compl. ¶¶ 15, 17, 34.) Plaintiff does not claim that La Bouff knew of the rescission returning Charlie to Scooter's. (Compl. ¶ 17.) Nor does Plaintiff specifically allege Starr's knowledge of the rescission. (Id.) Since Plaintiff has not alleged that either movant knew of the rescission, its supervisory liability claim against each movant fails, and therefore, each movant's motion to dismiss count one of the Complaint is granted.

In light of this dismissal, the merits of each individual movant's qualified immunity defense need not be decided. See Kwai Fun Wong v. United States, 373 F.3d 952, 977 (9th Cir. 2004) (declining to reach defendants' qualified immunity defense after dismissing claim on other grounds); see also Camreta v. Greene, 131 S. Ct. 2020, 2045 (2011) (Kennedy, J., dissenting) ("It is sometimes a better analytic approach and a preferred allocation of judicial time and resources to dismiss a

claim on the merits rather than to dismiss based on qualified immunity.").

### 2. Equal Protection Clause

Each Defendant seeks dismissal of Plaintiff's Equal Protection Clause claim in Count Two of the Complaint, arguing that Plaintiff is not a member of a protected class and Defendants did not treat Plaintiff "differently than other persons in that [purported] class." (Mot. 16:22-25, 16:22.) Plaintiff counters that it asserted a "class of one" equal protection clause claim because "Defendant intentionally treated Scooter's Pals as a rescue differently than other owners of dogs who are provided due process." (Opp'n 13:19-20.)

In a "class of one" claim, the plaintiff need not be a member of a class facing discrimination; it is enough if the plaintiff alone faces "irrational and wholly arbitrary" state action. Valley Outdoor, Inc. v. City of Riverside, 446 F.3d 948, 955 (9th Cir. 2006). To allege a "'class of one' claim, [Plaintiff] must demonstrate that [Defendants]: (1) intentionally (2) treated [Plaintiff] differently than other similarly situated property owners, (3) without a rational basis." Gerhart v. Lake Cnty., Mont., 637 F.3d 1013, 1022 (9th Cir. 2011). The "discriminatory treatment '[must be] intentionally directed just at [Plaintiff], as opposed . . . to being an accident or a random act.'" N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008) (citation omitted) (second alteration in original). Here, Plaintiff has not sufficiently alleged that Starr, La Bouff, or any County employee(s) asserted to be responsible for killing Charlie knew that the adopter rescinded her contract with the County and made Plaintiff Charlie's owner. Since Plaintiff has not pled that any Defendant intentionally

15

singled out Plaintiff for discriminatory treatment, each Defendant's Motion to Dismiss Count Two of the Complaint is granted.

### 3. 28 U.S.C. 1985(3)

Each Defendant seeks dismissal of Plaintiff's 42 U.S.C. § 1985(3) conspiracy to interfere with civil rights claim in Count Three of the Complaint, arguing, inter alia: "plaintiff alleges no more than a conclusory statement that a conspiracy existed." (Mot. 18:25-26.) Plaintiff does not oppose this portion of the Motion. Plaintiff merely alleges that "Starr and LaBouff [sic] conspired together to order the euthanasia of Charlie without the required hearing to determine whether or not Charlie posted [sic] a threat to +the safety of others." (Compl. ¶ 31.) These bald conclusory allegations are insufficient to state a claim for relief, since "[a] mere allegation of conspiracy without factual specificity is insufficient to support a claim." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990). Therefore each Defendant's motion to dismiss Count Three of the Complaint is granted.

### 4. California Constitution & Common Law Conversion

Each Defendant seeks dismissal of the Fourth, Fifth, Sixth, and Seventh claims in Plaintiff's Complaint, which are alleged to arise under the California Constitution and the California common law of conversion. This dismissal request is premised on each Defendant's argument that "Plaintiff has not sufficiently alleged an ownership interest in the dog." (Mot. 19:10, 19:22, 20:4-6, 20:22-23.)[3] However, it has not been shown that Plaintiff's ownership claim lacks "facial

---

[3] Scooter's alleges in the Complaint that "[o]n July 26, 2011 the previous adopter of Charlie notified Defendants she rescinded the contract to turn over ownership to Defendant County entered into on June 28, 2011 and reconveyed ownership to Scooter's," and that Scooter's then notified Defendants of this rescission. (Compl. ¶¶ 16-17.)

16

plausibility" under the applicable standard. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Therefore, this portion of the Motion is denied.

### IV. CONCLUSION

Accordingly, Counts One, Two, and Three of Plaintiff's Complaint are DISMISSED. However Plaintiff is granted ten (10) days leave from the date on which this Order is filed to file an amended Complaint in which these claims are amended. Defendants' Motion is DENIED with respect to Counts Four, Five, Six, and Seven of the Complaint.

Each Defendant's alternative motion for a more definite statement concerning Counts One, Two, and Three of the Complaint is DENIED as moot in light of the ruling herein, and the alternative motion is DENIED as to Counts Four, Five, Six, and Seven of the Complaint since each movant failed to demonstrate entitlement to a more particularized statement of those claims.

Dated: October 19, 2012

GARLAND E. BURRELL, JR.
Senior United States District Judge