UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOOTER'S PALS RESCUE, | No. 2:12-cv-01736-TLN-KLN |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| COUNTY OF PLACER; MARK STARR, DVM; ANTHONY LA BOUFF, RICHARD BURTON, M.D. and JAMES GANDLEY, M.D., | |
| Defendants. | |

This matter is before the Court on Defendants' motion to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Notice of Mot. & Mot. to Dismiss Compl., ECF No. 29). Plaintiff opposes the motion. (Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 32.) Defendants filed a reply. (Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 33.) For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART with leave for Plaintiff to file a Third Amended Complaint.[1]

---

[1] This matter was submitted on the briefs pursuant to L.R. 230(g). (Minute Order, ECF No. 34.)

**I.     BACKGROUND[2]**

   **A.     Charlie the Dog**

This case arises out of the euthanasia of a dog, Charlie, a Labrador-Retriever mix. Charlie's elderly owners became unable to care for him and relinquished him to a rescue organization. (Second Am. Compl., ECF No. 26 at ¶ 14.) While waiting for adoption, Charlie lived with a foster family. During his time with his foster family, Charlie did not engage in any physically threatening behavior. (ECF No. 26 at ¶ 15.) Eventually, a woman named Rebecca Clark requested to adopt Charlie. The rescue organization conditioned Charlie's adoption such that Charlie could not be placed in a home with children under ten years old given his large size and lack of socialization.

Clark falsely represented that no children under ten years old lived in her home and adopted Charlie on June 16, 2011. (ECF No. 26 at ¶ 16.) Contrary to her representation, however, Clark had a seven-year-old daughter living in her home. (ECF No. 26 at ¶ 17.)

On June 27, 2011, Charlie was provoked and he bit Clark's seven-year-old daughter. As a result of the bite, the daughter required medical treatment including numerous stitches. (ECF No. 26 at ¶¶ 17–18.) On or about June 28, 2011, Charlie was impounded after Clark was told she must turnover ownership of Charlie to Defendant Placer County ("the County"). The County and Clark entered into an agreement in which the County received ownership of Charlie in exchange for the County waiving impoundment and transport fees to Clark (Clark owed approximately $530). Clark relinquished Charlie to the County under duress because she could not afford to pay the impoundment and transport fees. (ECF No. 26 at ¶ 17.)

   **B.     Plaintiff Scooter's Pals Rescue**

Plaintiff Scooter's Pals Rescue ("Scooter's") is a 501(c)(3) corporation that provides foster homes and permanent homes for abused or abandoned dogs scheduled to be killed in local

---

[2] The facts are taken from Plaintiff's Second Amended Complaint. *See Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1142–43 (9th Cir. 2012) ("In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555–56 (2007)).

and nearby shelters. (ECF No. 26 at ¶ 4.) After Scooter's learned of Charlie's impoundment, on July 6, 2011, Scooter's contacted the Placer County animal shelter stating that it wanted to rescue Charlie. (ECF No. 26 at ¶ 19.)

### C.  Defendants Placer County, Starr, La Bouff, Burton, and Gandley

On July 7, 2011, Scooter's learned that the County and Defendant Mark Starr, the former director of the County's Health and Human Services Department, were denying Charlie's release because Clark relinquished Charlie to the shelter and the County determined Charlie to be vicious. (ECF No. 26 at ¶¶ 6, 20.) On July 26, 2011, Clark, through counsel, notified Defendant Starr and other County employees that she wanted to rescind her agreement relinquishing Charlie. La Bouff then learned of the rescission. Clark also signed a statement of rescission under penalty of perjury. The statement also reconveyed ownership of Charlie from Clark to Scooter's. Scooter's as Charlie's new owner requested Charlie's immediate release or in the alternative a due process hearing. (ECF No. 26 at ¶ 21.)

Rather than returning Charlie to Scooter's or holding a vicious-animal hearing Defendants ordered Charlie to be euthanized. (ECF No. 26 at ¶¶ 22, 24.) Scooter's filed a notice of appeal with Placer County Superior Court, Case No. MCV0051790. (ECF No. 26 at ¶ 23.) Defendants Starr, Burton, and Gandley were the final policymakers as to animal-control issues such as whether to afford a due process hearing and Defendant La Bouff was a final policymaker with respect to parties like Scooter's who threatened to bring civil actions. (ECF No. 26 at ¶¶ 10, 22.) Individual Defendants Starr, Burton, Gandley, and La Bouff conspired with one another and discussed that they would deprive Scooter's of its rights to due process and equal protection. (ECF No. 26 at ¶ 11.) Defendants euthanized Charlie on July 29, 2011. (ECF No. 26 at ¶ 24.)

### D.  Procedural Posture

Scooter's subsequently filed this instant lawsuit. In the operative complaint, the Second Amended Complaint, Scooter's asserts seven claims for relief alleging denial of federal constitutional rights under the Fourth and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985, violation of state constitutional rights, and a state law claim for conversion.[3] (ECF No. 26.)

---

[3] Defendants previously moved to dismiss the initial complaint challenging the sufficiency of

3

Defendants bring the instant motion to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Scooter's claims should be dismissed because the individual Defendants are entitled to qualified immunity. Defendants further argue that because the individual Defendants did not violate the constitution, the claims against the County should also be dismissed.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

---

Plaintiff's jurisdictional and substantive allegations under Rules 12(b)(1) and 12(b)(6) respectively. (Notice of Mot. & Mot. to Dismiss Compl., ECF No. 9.) This Court through the Honorable Judge Burrell granted Defendants' motion to dismiss in part and dismissed counts one, two, and three of Plaintiff's complaint against all Defendants. (Order, ECF No. 15.) Plaintiff filed a First Amended Complaint on November 1, 2012. Defendants moved to dismiss the First Amended Complaint, but Plaintiff obtained leave of the Court to file a Second Amended Complaint rendering the motion to dismiss the First Amended Complaint moot. (Order, ECF No. 24.)

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed. *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.     ANALYSIS

#### A.     <u>Individual Defendants and Qualified Immunity</u>

Scooter's asserts claims for relief against individual Defendants under 42 U.S.C. § 1983, which provides a federal claim for relief for the deprivation of civil rights made under the color of state law.  42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.").  Similarly section 1985(3)

prohibits conspiracies to deprive persons of their civil rights. 42 U.S.C. § 1985(3). Sections 1983 and 1985 confer no substantive rights themselves, but rather "provide[] remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).

The doctrine of qualified immunity, however, insulates government officials[4] from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The determination of qualified immunity therefore requires a two-step test: (1) whether facts alleged, taken in the light most favorable to the injured party, show the defendants' conduct violated a constitutional right; and (2) whether the right was clearly established. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc). "Qualified immunity balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Accordingly, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 233–34 (1991) ("Because qualified immunity protects government officials from suit as well as from liability, it is essential that qualified immunity claims be resolved at the earliest possible stage of litigation.") (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is an affirmative defense; the burden of pleading it rests with the defendant. *Crawford-El v. Britton*, 523 U.S. 574, 586–87 (1998) (citing *Gomez v. Toledo*, 446 U.S. 635, 639-41 (1980)).

Individual Defendants Starr, La Bouff, Burton, and Gandley move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) asserting that they are entitled to qualified immunity. To determine whether qualified immunity applies to individual Defendants, the Court

---

[4] Qualified immunity protects only individuals, not municipalities or other governmental entities. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).

first determines whether Scooter's has alleged a violation of a constitutional right, and then examines whether that right is clearly established.[5]

### 1.     Identification of the Constitutional Right Violated

As a threshold matter, Defendants argue they did not deprive Scooter's of any constitutional rights because Scooter's was not Charlie's owner. According to Defendants, Charlie's owner was Rebecca Clark who relinquished Charlie. Defendants refer to section 31108.5 of the California Food and Agriculture Code which expressly authorizes the County to euthanize a vicious dog upon relinquishment. Cal. Food & Ag. Code § 31108.5 ("Upon relinquishment, the dog may be made available for immediate euthanasia if it has a history of vicious or dangerous behavior documented by the agency charged with enforcing state and local animal laws."). Scooter's counters that Clark only relinquished Charlie to avoid paying County impoundment fees and therefore her relinquishment was invalid under duress. Because Clark only relinquished Charlie under duress, Scooter's argues that Clark was able to rescind her relinquishment of Charlie. *See* Cal. Civ. Code § 1689 (listing duress as one of the grounds for rescission of a contract). Scooter's alleges that Clark transferred her ownership of Charlie to Scooter's after Clark's rescission.

The Court finds that Scooter's has not sufficiently alleged that Clark was under duress when she relinquished Charlie.[6] Economic duress "may arise from an act that is so coercive as to cause a reasonably prudent person, faced with no reasonable alternative, to agree to an unfavorable contract." *Aulakh v. 7-Eleven, Inc.*, No. 1:04-cv-06151-OWW-LJO, 2006 WL 224398, at *6 (E.D. Cal. Jan. 27, 2006) (internal quotation marks omitted) (quoting *Tarpy v. Cnty.*

---

[5] Prior to the Supreme Court's decision in *Pearson v. Callahan*, the Court required that the first question – whether the plaintiff has alleged a violation of a constitutional right – be decided first in every qualified immunity case. However, in *Pearson*, the Supreme Court held that district courts may decide in their discretion whether any such right is a "clearly established" first without engaging in the academic exercise of whether the underlying conduct is unconstitutional. *Pearson*, 555 U.S. at 227, 237.

[6] California recognizes physical coercion as a form of duress. *See* Cal. Civ. Code § 1569 (defining duress as unlawful or fraudulent confinement of the person or unlawful detention of property). Here, however, no physical coercion is alleged in this case.

*of San Diego*, 110 Cal. App. 4th 267, 277 (2003); *CrossTalk Prod., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 644 (1998). Economic duress therefore requires: (1) a wrongful act or wrongful threat to pressure another into consenting to the contract; (2) a reasonable person in victim's position would have believed that he or she had no reasonable alternative except to consent to the contract; and (3) the victim would not have consented to the contract without the wrongful act or wrongful threat. *See* Judicial Council of Cal. Civil Jury Instructions, No. 333 (2013).

Here, Scooter's alleges the following with respect to the relinquishment of Charlie:

> Charlie was impounded after the adopter [Clark] was told she must turnover ownership of Charlie to the County. Defendant County and Clark entered into an agreement where Defendant County was given ownership of Charlie in return to the County waiving impoundment and transport fees to Clark, where she owed approximately $530.00. This agreement was made under duress because Clark did not have the money to pay these fees.

(ECF No. 26 at ¶ 17.) The Court finds that even if true, these allegations are insufficient to establish a coercive wrongful act compelled Clark to relinquish Charlie to the County. A mere inability to pay impoundment fees does not amount to economic duress. *See Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987) (applying California law) ("Economic duress occurs when a person subject to a wrongful act, such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin."); *Rich & Whillock, Inc., Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158–59 (1984) (holding that wrongful acts for purposes of economic duress include the assertion of a claim known to be false, or a bad faith threat to breach a contract or to withhold a payment). Here, Scooter's does not allege any facts that Clark would be subject to "financial ruin" if she was required to pay the impoundment fees or that anyone knew of Clark's economic vulnerability. Nor does Scooter's allege any facts that the persons who impounded Charlie or the Defendants made false claims or bad faith threats when they told Clark she had to turn over Charlie to the County. Also absent is any allegation that Clark would not have consented to the contract without the wrongful act or wrongful threat. Accordingly, Scooter's fails to allege Clark was under economic duress when she relinquished Charlie.

Besides duress, Scooter's fails to identify any other grounds for Clark's rescission of her relinquishment of Charlie. *See* Cal. Civ. Code § 1689 (setting forth grounds for rescission). Because Scooter's fails to allege sufficient facts to allege Clark's rescission of her relinquishment of Charlie, Scooter's fails to allege plausible facts as to its ownership of Charlie and therefore cannot plausibly allege that Clark possessed any ownership interest in Charlie to convey to Scooter's. Accordingly, Scooter's fails to sufficiently allege a deprivation of any constitutional rights, and Defendants' motion to dismiss based on qualified immunity is granted on this ground. *See Pennington v. Penner*, 207 F. Supp. 2d 1225, 1241–42 (D. Kan. 2002) (dismissing complaint where plaintiff alleged that he was compelled to surrender his horses under duress).

2. <u>Whether the Right was Clearly Established</u>

Even if Scooter's had alleged a constitutional violation, however, the Court finds that the constitutional right was not clearly established. For a right to be clearly established for qualified immunity purposes the "contours of the right must be sufficiently clear that [at the time the action is taken] a reasonable official would understand that what he is doing violates that right." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal quotation marks omitted and alteration in original). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Accordingly, a court must determine the level of generality of the relevant legal rule. *Cf. Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("It could plausibly be asserted that any violation of the Fourth Amendment is 'clearly established' since it is clearly established that the protections of the Fourth Amendment apply to the actions of police."). The precise act challenged need not have previously been held unlawful in order to defeat qualified immunity, but its unlawfulness must be "apparent" in light of pre-existing law. *Id.* Whether a right was clearly established at the relevant time is a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

The Court finds there is no clearly established constitutional right to release a dog or conduct a hearing prior to euthanizing a dog when the owner has purported to relinquish her dog

9

to the County.[7] *See Young v. Cnty. of Hawaii*, No. 11-cv-00583 ACK-RLP, 2013 WL 2286068, at *14–21 (D. Haw. May 22, 2013); *Pennington*, 207 F. Supp. 2d at 1241–42 (finding animal control officer entitled to qualified immunity who relied on plaintiff's agreement to relinquish horses even though plaintiff alleged agreement was obtained under duress). In *Young*, the defendants seized 17 dogs from the plaintiff's residence pursuant to a search warrant. A relative of plaintiff told defendants that she had plaintiff's power of attorney. Pursuant to that power she completed a form purporting to surrender the dogs to the defendants. In reliance on that surrender form, the defendants euthanized several of the seized dogs and placed the other dogs up for adoption. The plaintiff, however, claimed that he never gave power of attorney to his relative and therefore the relative's surrender of his dogs was legally inoperative. The plaintiff brought an action against defendants, alleging deprivation of constitutional rights, including unreasonable search and seizure, and violation of due process and equal protection rights. The court granted summary judgment in favor of defendants finding the defendants' actions were protected by qualified immunity. Specifically, the court found "no clear statute or court precedent that an animal control officer violates constitutional rights by relying on facially valid forms consenting to the transfer of ownership of property to the government." *Young*, 2013 WL 2286068, at *17 (citing *Pennington*, 207 F. Supp. 2d at 1241).

As in *Young* the Court similarly finds there is no clearly established constitutional right that required Defendants to return Charlie to Scooter's or to conduct a hearing prior to his euthanasia. Clark purported to relinquish Charlie to the County, and in reliance on that relinquishment, Defendant euthanized Charlie. Scooter's alleges Clark rescinded her relinquishment of Charlie to the County and transferred her ownership interest to Scooter's,

---

[7] Neither Plaintiff nor Defendants discuss the contours of the particular constitutional rights at issue i.e., due process, and equal protection. Instead the parties agree that Plaintiff's constitutional claims depend necessarily on who owned Charlie at the time of his euthanasia. (*See* ECF No. 32 at 2:2–4 ("Defendants violated a clearly established constitutional right of due process and equal protection when euthanizing . . . Charlie before conducting a due process vicious dog hearing found under both County ordinances and state law . . . ."), *and* ECF No. 33 at 2:3–6 ("There is no dispute that an owner of a dog believed to be vicious has a right to a vicious dog hearing . . . . Plaintiff, however, was not (as a matter of law) the owner of the dog and never became the owner of the dog.").)

1 making Clark's relinquishment legally inoperative. Scooter's alleges that Defendants have
2 committed unreasonable search and seizure, and violation of its due process and equal protection
3 rights. However, the parties have not provided, nor is the Court aware of, any controlling
4 authority that government officials violate any of these constitutional rights by relying on facially
5 valid forms relinquishing dogs to their custody for euthanasia. In fact, the opposite appears to be
6 true. *See Young*, 2013 WL 2286068, at *14–21; *Pennington*, 207 F. Supp. 2d at 1241–42.
7 Furthermore, the parties vigorously dispute whether Clark is legally able to rescind her
8 relinquishment of Charlie to the County. (*See* ECF No. 29-1 at 8:8–9:6 (arguing that permitting
9 rescission of a contract with the County would amount to a surrender of its police powers).) The
10 existence of such a dispute further demonstrates to the Court a lack of a "clearly established"
11 constitutional right of Clark's ability to transfer Charlie to Scooter's, Defendants' obligation to
12 release Charlie or to provide a hearing prior to euthanizing him. *See James v. Rowlands*, 606
13 F.3d 646, 652–53 (9th Cir. 2010) (holding that a violation of a clearly established right occurs
14 "only where 'conduct is so patently violative of the constitutional right that reasonable officials
15 would know without guidance from the courts that the action was unconstitutional'") (quoting
16 *DeBoer v. Pennington*, 206 F.3d 857, 864–65 (9th Cir. 2000), *vacated on other grounds by*
17 *Bellingham v. DeBoer*, 532 U.S. 992 (2001)).

18 Therefore, the Court finds that individual Defendants were not violating a clearly
19 established constitutional right when Charlie was euthanized pursuant to Clark's purported
20 relinquishment. Accordingly, individual Defendants are insulated from personal liability under
21 the doctrine of qualified immunity, and these claims are dismissed with prejudice.

22 **B.     Scooter's State Law Claims Against Individual Defendants**

23 Individual Defendants also seek dismissal of the state law claims asserted against them.
24 (*See* ECF No. 29 at 5:4 (arguing that "as to all claims, Defendants Starr, La Bouff, Burton and
25 Gandley have qualified immunity").) Neither party, however, devotes any briefing to the specific
26 state law claims alleged here. Defendants cite no authority for the proposition that qualified
27 immunity, a federal common law defense, applies to Scooter's state law claims. *Compare*
28 *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009) ("[g]overnmental immunity for claims

11

of violation of civil rights under section 1983 is not conferred expressly by statute, but is based upon a judicial gloss on section 1983, whereas governmental immunity under California law is governed by statute") (internal quotation marks omitted and alterations in original) (quoting *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 755–56 (1997)).  Therefore, to the extent that Defendants move to dismiss Scooter's state law claims against them, because they provide no authority to support their position, the Court denies the motion to dismiss.

### C. Scooter's *Monell* Claims against Defendant Placer County

Defendant Placer County also moves to dismiss Scooter's section 1983 claims against it. In *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978), the Supreme Court held that municipalities can be held liable for deprivations of individuals' civil rights pursuant to 42 U.S.C. § 1983.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).  Defendant argues that Scooter's *Monell* claims fail because there are no underlying constitutional violations properly alleged.  As set forth above, the Court finds that Scooter's has failed to sufficiently allege any constitutional violations.  Therefore, the Court also dismisses the claims against Defendant Placer County.  *See Villegas v. Gilroy Festival Ass'n,* 541 F.3d 950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no municipal liability.").

However, since it may be possible for Scooter's to amend the complaint to allege a constitutional violation, the Court grants Scooter's permission to file a third amended complaint to address the deficiencies identified in section III.A.1 in this order consistent with the liberal policy of granting leave to amend.  However, should Scooter's be unable to properly allege that it has suffered a constitutional violation in its Third Amended Complaint, the Court will dismiss the complaint without leave to amend.  *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) ("the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint") (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendants' motion to dismiss the Second

Amended Complaint is GRANTED IN PART AND DENIED IN PART;

1. Plaintiff's first, second, and third claims for relief are DISMISSED WITH PREJUDICE against individual Defendants Starr, La Bouff, Burton, and Gandley in their personal capacities based on qualified immunity;

2. Plaintiff's first, second, and third claims for relief against Defendant Placer County are DISMISSED WITH LEAVE TO AMEND;

3. Scooter's shall file and serve a Third Amended Complaint within fourteen (14) days of entry of this Order;

4. Defendants are to file their responsive pleading within twenty-one (21) days of service of the Third Amended Complaint.

**IT IS SO ORDERED.**

Dated: November 1, 2013

Troy L. Nunley
United States District Judge